696 S.E.2d 18

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**William GEORGIUS, III, Defendant Below, Appellant.**

No. 34807.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 2010.

Decided May 12, 2010.

R. Steven Redding, Esq., Redding Law Firm, Hedgesville, WV, Attorney for Appellant.

Christopher C. Quasebarth, Esq., Chief Deputy Prosecuting Attorney, Berkeley County Prosecuting Attorney's Office, Martinsburg, WV, Attorneys for Appellee.

PER CURIAM:

This case is before the Court upon an appeal of the July 1, 2008, order of the Circuit Court of Berkeley County through which the circuit court denied a motion by the appellant, William Georgius, III, for reconsideration of his indeterminate sentence of not less than fifteen nor more than thirty-five years in the state penitentiary upon his conviction for first degree sexual assault in violation of W.Va.Code § 61–8B–3 (2000). On appeal, the appellant maintains that the circuit court failed to properly apply the law as set forth in *State v. Arbaugh,* 215 W.Va. 132, 595 S.E.2d 289 (2004). Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court did not commit reversible error and accordingly, affirm the decision below.

## I.

### FACTS

On March 18, 2005, the appellant, William Georgius, III, was found guilty by a Berkeley County jury of first degree sexual assault in violation of W.Va.Code § 61–8B–3, for the sexual assault of his then five-year-old niece. The appellant was fifteen years old at the time of the 2002 offense; however, he was eighteen years old at the time of his sentencing.

During his March 17, 2005, trial, the appellant's defense was that he did not commit sexual assault against the victim. The victim, however, provided detailed testimony regarding the appellant's actions toward her. The victim explained that on three occasions the appellant took her to his room, removed

her clothes, and told her that she had a splinter that he had to remove from her rectum. On those occasions, the victim testified that the appellant inserted his penis into her rectum and that she cried because "it hurt like twenty knives going up my butt."

The victim also explained that during the last time the appellant sexually assaulted her, that he placed a pillow over her head "so that [she] wouldn't scream as loud." With regard to that same incident, the victim said that after the appellant removed his penis from her, he told her that he also had a splinter in his private part that needed removed and asked her "to suck it out." The appellant then ejaculated. The victim's mother explained that she learned about the appellant's sexual assault after she witnessed the victim placing a pillow over her baby doll's head. After telling the victim not to do that because her baby would suffocate, the victim said that her uncle, the appellant, had placed a pillow over her head when he was removing a splinter from her rectum.

As previously stated, following a jury trial, the appellant was convicted of first degree sexual assault. Thereafter, the circuit court found in its August 3, 2005, order that the appellant "accepted no responsibility for his actions and exhibited no remorse." In fact, during his April 29, 2005, three-hour interview by child psychiatrist Joseph R. Novello, M.D., which was a part of the pre-sentencing forensic evaluation, the appellant continued to maintain his innocence in spite of his conviction. He contended: "I know I'm innocent and God knows too." He cited to his alibi witnesses who testified that he could not have been present at the time of the alleged crimes. He said that the circuit court, however, chose to believe the word of "a five-year-old girl." The appellant said that "there was [sic] no witnesses, no physical evidence, no DNA—no nothing." During the

sentencing hearing, the victim's mother, who is the appellant's sister, requested that the appellant receive the maximum sentence allowed. On August 13, 2005, the appellant was sentenced to an indeterminate sentence of fifteen to thirty-five years in the State penitentiary.

The appellant did not appeal his conviction or his sentence; however, on October 11, 2005, he timely filed a Rule 35(b) motion under the West Virginia Rules of Criminal Procedure requesting that the circuit court reconsider his sentence.[1] Nearly three years later, the circuit court heard testimony on the motion for reconsideration from the appellant. The appellant, who was twenty-one years old at the time, testified that he had admitted his guilt to his father and sisters and regretted his previous denials. He said that he made the admission following the death of his mother in November 2006 because she died believing a lie and that he did not want his father to die without knowing the truth regarding the appellant's sexual assault of his niece. He had not, however, admitted his guilt or offered an expression of regret directly to the victim at any time.

At the same hearing, the appellant's sister testified that her parents, who were also the appellant's parents, were abusive and negligent toward her and the appellant as they grew up in their home. She said that in spite of the fact that she "wanted to skin [the appellant] alive" prior to his initial sentencing for the sexual assault of her daughter, she now favored a reduction of his sentence. She also testified that she no longer had legal custody of the victim. She stated that the victim, who was eleven at that time, lived with her father. She was not even able to answer where the victim attended school as she testified: "I'm not really sure, to be honest with you."

1. Rule 35(b) of the West Virginia Rules of Criminal Procedure provides that,

Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an

order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

The appellant then agreed with the information provided by his sister regarding abusive parents, however, that testimony conflicted with the appellant's prior statement incorporated in the pre-sentence report wherein he stated that he and his parents had an excellent relationship. Moreover, during the reconsideration hearing, the circuit court recognized the inconsistency from his prior statements and noted that after his conviction, and while he was an adult, the appellant "stated that he was never abused as a child and he characterized his family as being all American." On July 1, 2008, the circuit court denied the appellant's motion for reconsideration. This appeal followed.

## II.

### STANDARD OF REVIEW

■ The following standard of review was enunciated in Syllabus Point 1 of *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996), and will be utilized by this Court:

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

This Court has further held that:

As a general rule, the sentence imposed by a trial court is not subject to appellate review. However, in cases ... in which it is alleged that a sentencing court has imposed a penalty beyond the statutory limits or for impermissible reasons, appellate review is warranted. Syl. Pt. 4, *State v.*

*Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

*State v. McClain*, 211 W.Va. 61, 64, 561 S.E.2d 783, 786 (2002). Moreover, with regard to this Court's review of the circuit court's sentencing determination, this Court explained that: "The Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). With these standards in mind, the parties' arguments will be considered.

## III.

### DISCUSSION

■ The appellant argues that the circuit court erred when it denied his motion for a reconsideration of his sentence based upon this Court's holding in *Arbaugh, supra.* The appellant contends that in *Arbaugh*, this Court reversed the circuit court for its failure to place a fifteen-year-old defendant on probation during sentencing following his guilty plea to first degree sexual assault against his half-brother. In *Arbaugh*, this Court reversed the circuit court and remanded the case with instructions to grant the defendant probation and allow him to attend a renowned sexual offender treatment program. Nonetheless, the appellant states that in spite of the "clear and unambiguous language of *Arbaugh*," the circuit court in the case at hand, "did not make any effort to follow this very recent precedent." The appellant declares that this Court's holding in *Arbaugh* made it clear that youthful offenders should be treated differently than their adult counterparts. Accordingly, the appellant argues that this Court should remand this case to the circuit court with instructions to either order the appellant to be sent to the Anthony Correctional Center,[2] or in the al-

---

**2.** With regard to the appellant's contention that he should have been placed in the Anthony Correctional Center, this Court has explained:

Just as a trial court's decision to grant or deny probation is subject to the discretion of the sentencing tribunal, so too is the decision whether to sentence an individual pursuant to the Youthful Offenders Act. The determinative language of West Virginia Code § 25–4–6 is

stated indisputably in discretionary terms: "[T]he judge of any court ... may suspend the imposition of sentence ... and commit the young adult to the custody of the West Virginia commissioner of corrections to be assigned to a center." *Id.* (emphasis supplied). Since the dispositive statutory term is "may," there can be no question that the decision whether to invoke the provisions of the Youthful Offenders

ternative, to grant the appellant probation[3] and order that he thereafter be enrolled in an inpatient sexual offender program.

Conversely, the State maintains that the appellant's argument that the circuit court should have sentenced him differently is without merit. The State contends that the appellant showed no remorse and accepted no responsibility for his offense at his sentencing hearing in spite of the significant emotional trauma experienced by the victim, nor did the appellant present any evidence that he would not be a continuing threat to the victim or to the community. The State also points out that several members of the appellant's family spoke at his sentencing hearing and requested that the court impose the statutory sentence.

In the case at hand, the statutory sentence for felony first degree sexual assault, in violation of W.Va.Code § 61–8B–3 is fifteen to thirty-five years in the penitentiary. The version of the statute applicable at the time of the appellant's 2005 trial[4] provided as follows:

> Act is within the sole discretion of the sentencing judge. *See State v. Allen*, 208 W.Va. 144, 160, 539 S.E.2d 87, 103 (1999) (recognizing that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court"); *accord State v. Richards*, 206 W.Va. 573, 575, 526 S.E.2d 539, 541 (1999) (stating that Youthful Offenders Act "grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center"); *see also State v. Hersman*, 161 W.Va. 371, 242 S.E.2d 559 (1978) (discussing factors to be considered by sentencing judge in determining whether an individual should be sentenced as a youthful offender).
> *State v. Shaw*, 208 W.Va. 426, 430, 541 S.E.2d 21, 25 (2000).

3. With regard to the appellant's contention that he should have been granted probation, this Court has explained:

> We have recognized that probation is a privilege of conditional liberty bestowed upon a criminal defendant through the grace of the circuit court. *See, e.g., State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 32–33, 239 S.E.2d 660, 661–62 (1977) (" '[A] defendant convicted of a crime has no absolute right to probation, probation being a matter of grace only, extended by the State to a defendant convicted of a crime, in certain circumstances and on certain conditions.' " (quoting *State v. Loy*, 146 W.Va. 308, 318, 119 S.E.2d 826, 832 (1961))); Syl.

(a) A person is guilty of sexual assault in the first degree when:

(1) The person engages in sexual intercourse or sexual intrusion with another person and, in so doing:

(i) Inflicts serious bodily injury upon anyone; or

(ii) Employs a deadly weapon in the commission of the act; or

(2) The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less and is not married to that person.

(b) Any person violating the provisions of this section is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than fifteen nor more than thirty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in a state correctional facility not less than fifteen nor more than thirty-five years.

> pt. 1, *State v. Rose*, 156 W.Va. 342, 192 S.E.2d 884 (1972) ("Probation is a matter of grace and not a matter of right."); *State ex rel. Riffle v. Thorn*, 153 W.Va. 76, 81, 168 S.E.2d 810, 813 (1969) (" 'Probation or suspension of sentence comes as an act of grace to one convicted of a crime[.]' " (quoting *Escoe v. Zerbst*, 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566, 1568 (1935))); Syl. pt. 2, *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 165 S.E.2d 90 (1968) ("Probation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime.").
> *State v. Duke*, 200 W.Va. 356, 364, 489 S.E.2d 738, 746 (1997).

4. West Virginia Code § 61–8B–3 was amended in 2006. The 2006 amended version, not applicable to this case, substituted "younger than twelve years old" for "eleven years old or less" in section (a)(2) and also added the following new section:

> (c) Notwithstanding the provisions of subsection (b) of this section, the penalty for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age, shall be imprisonment in a state correctional facility for not less than twenty-five nor more than one hundred years and a fine of not less than five thousand dollars nor more than twenty-five thousand dollars.

It is undisputed that the sentence imposed upon the appellant by the circuit court was within the statutory limits. Moreover, the appellant does not contend that any impermissible factor was used by the circuit court in sentencing him. As this Court has firmly established, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

Instead of challenging his sentence based upon statutory limits or some impermissible factor, the appellant relies solely on *Arbaugh* and argues that "the trial judge failed to perform an analysis pursuant to the guidelines required by this Court under *Arbaugh*." The appellant further states that *Arbaugh* is similar to his situation because he also "led a painful life," including emotional abuse from family members. As previously discussed, however, the first time the appellant made these allegations *was six years after assaulting his niece* and during a hearing for his motion for reconsideration of his sentence. In fact, his pre-sentence report contained statements from the appellant indicating that he and his parents had an excellent relationship. Likewise, the appellant's main complaint about his family life during his youth was that there were inappropriate sexual comments made by his father "more than a few times."

The appellant's reliance on *Arbaugh* is massively misplaced. This Court's decision in *Arbaugh* did not create any new standards, guidelines, or requirements to be followed by the circuit courts of this State as contended by the appellant in his brief before this Court. *Arbaugh* was a per curiam decision decided by this Court upon application of existing precedent and was confined to the very specific facts of that case. As such, we expressly reject the appellant's attempt to elevate or expand this Court's very limited per curiam decision in *Arbaugh*.

At the hearing following his motion for reconsideration of his sentence, the appellant testified that he participated in various educational programs offered through the prison system. He also testified that he regretted that he had not accepted responsibility earlier; however, he did not provide evidence that he expressed remorse or apology toward the victim. Furthermore, as the circuit court noted in its July 1, 2008, order, the appellant failed to present to the circuit court other important evidence including: the wishes of the victim or her father with regard to the appellant's request for a reduced sentence; the failure to provide any current psychological evidence from the appellant to assess his future risk to the victim or to the community; and the failure to provide any evidence regarding his diagnosis or whether or not any treatment was or should be mandated in any way in light of his underlying sexual assault. The appellant and his sister were the only people to testify at the reconsideration hearing. The circuit court held that the statutory penalty imposed on the appellant was

> not disproportionate to the serious felony of which the [appellant] was convicted. Incarceration in a State penal facility is the best means by which the public will remain safe from this [appellant]. The [appellant's] need for correctional treatment is best provided by his continued commitment to a correctional institution. A reduction in sentence will depreciate the seriousness of the [appellant's] crime.

In *State v. Redman*, 213 W.Va. 175, 179–80, 578 S.E.2d 369, 373–74 (2003), this Court held that the circuit court did not abuse its discretion in denying a Rule 35(b) motion to reconsider where no new arguments or reasons for granting the motion were presented. The Court held:

> Because nothing new had transpired in the period following the trial court's ruling on the probation revocation petition, it stands to reason that there would be no additional findings of fact or legal rulings required, other than the granting or denial of the Rule 35 motion itself. *See* Syl. Pt. 4, in part, *Head*, 198 W.Va. at 299, 480 S.E.2d at 508 (holding that "[w]hen considering West Virginia Rules of Criminal Procedure 35(b) motions, circuit courts generally should consider only those events that occur within the 120–day filing period"). In making its ruling of August 3, 2001, deny-

ing the Rule 35(b) motion, the trial court recognized that Appellant's counsel had not introduced any new arguments or reasons regarding the issue of probation. Consequently, the trial court referenced the reasons previously given in its March 16, 2001, ruling in denying probation in the first instance. By clearly incorporating its earlier findings of fact and conclusions of law from the March 16, 2001, ruling and given the absence of any new evidence or even new legal arguments raised through the Rule 35 motion, the lower court was not in violation of this Court's holdings that require findings of fact and conclusions of law as a necessary prerequisite to appellate review.

Moreover, in *State v. Sugg*, 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995), we held that "[a]s a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute." It is not the proper prerogative of this Court to substitute its judgment for that of the trial court on sentencing matters, so long as the appellant's sentence was within the statutory limits, was not based upon any impermissible factors, and did not violate constitutional principles. Similar to the situation in *Redman,* the appellant herein did not raise any new legal arguments nor did he provide any new evidence through the Rule 35 motion. Accordingly, the circuit court did not abuse its discretion in denying the appellant's motion to reconsider his sentence of not less than fifteen nor more than thirty-five years in the state penitentiary upon his conviction for first degree sexual assault in violation of W.Va.Code § 61–8B–3 (2000).

## IV.

## CONCLUSION

Accordingly, for the reasons stated above, the final order of the Circuit Court of Berkeley County entered on July 1, 2008, is affirmed.

Affirmed.

Chief Justice DAVIS dissents and reserves the right to file a dissenting opinion.

DAVIS, Chief Justice, dissenting:

In this case, the majority opinion has affirmed the trial court's denial of Mr. Georgius' motion for reconsideration of his sentence. In doing so, the majority opinion focused upon Mr. Georgius' request to be granted probation. Although I am inclined to agree with the majority opinion that the trial court did not abuse its discretion in denying probation, I disagree with the majority's determination that the trial court did not abuse its discretion in denying Mr. Georgius' request to suspend his sentence and remand him to a youthful offender center.[1] Consequently, I dissent from the majority opinion. My dissent rests upon two grounds: (1) there are no meaningful guidelines for determining whether a defendant should be committed to a youthful offender center, and (2) compelling facts warranted reversing and remanding this case for the trial court to reconsider Mr. Georgius' request for youthful offender treatment. I will separately address my two concerns below.

### A. There Are No Meaningful Guidelines for Determining Whether a Defendant Should Be Committed to a Youthful Offender Center

Under our Youthful Offender Act, W. Va. Code § 25–4–1, *et seq.,* a trial court may suspend a defendant's sentence and commit the defendant to a youthful offender center. The Legislature has determined that the purpose of the Act "is to provide appropriate facilities for the housing of young adult offenders convicted of or pleading guilty to violation of law ... who are amenable to discipline other than in close confinement, and to give better opportunity to young adult offenders for reformation and encouragement of self-discipline." W. Va. Code § 25–4–1 (1999) (Repl. Vol. 2008). We have recognized that the underlying motivation behind the Act is to give " 'young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment.' " *State v. Turley,* 177 W.Va. 69, 73, 350 S.E.2d 696, 700 (1986)

1. The majority opinion disposed of this issue in a    footnote.

(quoting *United States v. Murray*, 275 U.S. 347, 357, 48 S.Ct. 146, 149, 72 L.Ed. 309, 313 (1928)). The statutory criteria by which a trial court may commit a defendant to a youthful offender center is set forth in W. Va. Code § 25–4–6 (2009) (Supp. 2009) which states, in relevant part:

> The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any young adult, as defined in this section, convicted of or pleading guilty to a felony offense, other than an offense punishable by life imprisonment, including, but not limited to, felony violations of the provisions of chapter seventeen-c [§ 17C–1–1 et seq.] of this code, who has attained his or her eighteenth birthday but has not reached his or her twenty-third birthday at the time of the sentencing by the court and commit the young adult to the custody of the West Virginia Commissioner of Corrections to be assigned to a center. . . .

Under W. Va. Code § 25–4–6, a trial court may commit a defendant to a youthful offender center if (1) the defendant's sentence was not punishable by life imprisonment or a felony traffic offense and (2) at the time of sentencing, the defendant was at least eighteen, but not older than twenty-two, years of age. Insofar as W. Va. Code § 25–4–6 states that a trial court "may" commit a defendant to a youthful offender center, the determination is a discretionary one. *See State v. Shaw*, 208 W.Va. 426, 430, 541 S.E.2d 21, 25 (2000) ("Since the dispositive statutory term is 'may,' there can be no question that the decision whether to invoke the provisions of the Youthful Offenders Act is within the sole discretion of the sentencing judge."). This Court attempted to guide a trial court's decision-making process under the Act in *State v. Hersman*, 161 W.Va. 371, 242 S.E.2d 559 (1978), where it was said that:

> The determination of fitness for treatment as a youthful . . . offender should be predicated on factors relating to the subject's background and his rehabilitation prospects. Of necessity, the decision to treat a person as a youthful . . . offender is based on the fact that he will benefit and respond to the rehabilitative atmosphere of a detention center.

*Hersman*, 161 W.Va. at 376, 242 S.E.2d at 561. *Accord State v. Allen*, 208 W.Va. 144, 157–58, 539 S.E.2d 87, 100–01 (1999); *State v. Turley*, 177 W.Va. 69, 73 n. 6, 350 S.E.2d 696, 701 n. 6 (1986).

I believe that the general factors set out under *Hersman* are insufficient for meaningful assistance to trial courts in deciding whether to commit a defendant to a youthful offender center. Rather, in the instant proceeding, I believe the majority opinion should have undertaken the task of addressing the deficiencies inherent in the *Hersman* factors and articulated a more meaningful standard consistent with those adopted by other jurisdictions.

For example, the Massachusetts legislature has set out the following guidelines for trial courts to consider in deciding whether to sentence a defendant as a youthful offender:

> In making such determination the court shall conduct a sentencing recommendation hearing to determine the sentence by which the present and long-term public safety would be best protected. At such hearing, the court shall consider, but not be limited to, the following factors: the nature, circumstances and seriousness of the offense; victim impact statement; a report by a probation officer concerning the history of the youthful offender; the youthful offender's court and delinquency records; the success or lack of success of any past treatment or delinquency dispositions regarding the youthful offender; the nature of services available through the juvenile justice system; the youthful offender's age and maturity; and the likelihood of avoiding future criminal conduct. In addition, the court may consider any other factors it deems relevant to disposition.

Mass. Gen. Laws, chap. 119 § 58(c) (1998).

Moreover, the Oklahoma legislature has set out the following guidelines for trial courts in deciding whether to sentence a defendant as a youthful offender:

C. 1. The court shall order an investigation to be conducted unless waived by the accused person with approval of the court. Any such investigation required shall be conducted by the Office of Juvenile Affairs.

2. At the hearing the court shall consider, with the greatest weight given to subparagraphs a, b and c:

a. whether the offense was committed in an aggressive, violent, premeditated or willful manner,

b. whether the offense was against persons and, if personal injury resulted, the degree of injury,

c. the record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions,

d. the sophistication and maturity of the accused person and the capability of distinguishing right from wrong as determined by consideration of the psychological evaluation, home, environmental situation, emotional attitude and pattern of living of the accused person,

e. the prospects for adequate protection of the public if the accused person is processed through the youthful offender system or the juvenile system,

f. the reasonable likelihood of rehabilitation of the accused person if the accused person is found to have committed the alleged offense, by the use of procedures and facilities currently available to the juvenile court, and

g. whether the offense occurred while the accused person was escaping or on escape status from an institution for youthful offenders or delinquent children.

D. After the hearing and consideration of the report of the investigation, the court shall certify the person as eligible for the imposition of an adult sentence only if it finds by clear and convincing evidence that there is good cause to believe that the accused person would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected if the person were to be sentenced as a youthful offender.

In its decision on the motion of the state for imposition of an adult sentence, the court shall detail findings of fact and conclusions of law to each of the considerations in subsection C of this section and shall state that the court has considered each of its guidelines in reaching its decision.

Okla. Stat. tit. 10A § 2–5–208 (2009).

Additionally, the courts of New York have developed criteria for determining whether a defendant should receive treatment as a youthful offender:

While the statute does not set forth any specific criteria to be considered upon an application for youthful offender status, a review of pertinent caselaw indicates that the factors to be considered include the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life.

*People v. Cruickshank*, 105 A.D.2d 325, 484 N.Y.S.2d 328, 336 (1985).

In light of the above standards from other jurisdictions, I propose the following guidelines for circuit courts to consider in making the determination of whether a defendant should be provided youthful offender treatment. In deciding whether a defendant should be accorded youthful offender treatment, a trial court should consider: (1) whether the offense was against a person or property; (2) the extent of the injury to the person or property; (3) whether a weapon was used in the commission of the offense; (4) the age of the defendant at the time of the offense; (5) the maturity of the defendant; (6) the defendant's educational level; (7) the defendant's family background; (8) the defendant's prior criminal record; (9) the opinion of the victim or his/her family; (10) recommendations in the presentence report; (11) psychological evaluation; (12) whether the defendant has accepted responsibility for

the offense and expressed remorse; (13) institutional assessment of the defendant if he/she was confined prior to sentencing; (14) the best interests of the community; (15) the likelihood of reasonable rehabilitation of the defendant by the use of procedures, services, and facilities currently available at youthful offender centers; and (16) any other relevant mitigating or aggravating considerations.

In addition to the above guidelines, I would also require circuit courts to enter orders containing detailed findings of fact with respect to each of the aforementioned factors to afford this Court an opportunity for meaningful appellate review.

### B. Compelling Facts Warranted Reversing and Remanding this Case for the Trial Court to Reconsider Mr. Georgius' Request for Youthful Offender Treatment

The record in this case shows that, at the age of fifteen, Mr. Georgius sexually assaulted his five-year-old niece. Mr. Georgius was prosecuted as an adult for the crime. A jury convicted Mr. Georgius in March 2005, and he was sentenced to a term of imprisonment of not less than fifteen nor more than thirty-five years. At the time of Mr. Georgius' initial sentencing, he continued to deny having committed the crime. Further, at the time of sentencing, the victim's mother, Mr. Georgius' sister, urged the court to give Mr. Georgius the maximum sentence allowable by law. Shortly after being sentenced, Mr. Georgius filed a motion for reconsideration of the sentence. The motion for reconsideration, filed in 2005, was not heard until June 17, 2008. During the hearing on the motion, the following was established:

1. Mr. Georgius had a troubled upbringing, including a father who made repeated vulgar sexual comments directed at him, and a drug-addicted mother who abandoned the family when Mr. Georgius was young;

2. Mr. Georgius admitted in open court to having committed the crime for which he was convicted, and expressed remorse;

3. Mr. Georgius indicated he denied the crime during the trial because he was ashamed of himself and his actions, and believed his family would shun him;

4. Mr. Georgius admitted his crime to his father and sister;

5. Mr. Georgius' mother died while he was incarcerated;

6. While incarcerated, Mr. Georgius obtained his GED, took instruction in anger management, parenting classes, stress management education, and a sex offender course;

7. Mr. Georgius scored high enough on his GED exam to qualify for a $1,000.00 scholarship;

8. The victim's mother, Mr. Georgius' sister, testified at the initial sentencing hearing that she was extremely angry with her brother, and thus asked the judge to sentence Mr. Georgius to the maximum time permitted by law;

9. The victim's mother testified that she and her brother (Mr. Georgius) and sister had had an extremely difficult upbringing in that their mother was a drug addict and that their mother abandoned the family when Mr. Georgius was only nine years old;

10. The victim's mother testified that their father was mentally and emotionally abusive to his children and that he frequently made sexually inappropriate comments to his children;

11. The victim's mother's testimony provided an example of the type of vulgar behavior exhibited by her father, stating that if her brother (Mr. Georgius) procrastinated on a chore by saying he would do it later, her father would comment that "if you were living with your mother and you told [her boyfriend] 'later', then he'd stick his dick in your ass.";

12. The victim's mother testified that she witnessed first hand her father's mental and emotional abuse severely affecting her brother (Mr. Georgius) and that after their mother abandoned the family, her brother became very withdrawn, and his seclusion progressively worsened;

13. The victim's mother testified that her brother (Mr. Georgius) confessed his guilt to her during a prison visit, stated how sorry he was for what he had done, and expressed his hope that she could forgive him;

14. The victim's mother testified that she has come to realize that her brother

(Mr. Georgius) was only fourteen years old at the time the crime was committed, and that she now believes the sentence was too harsh; and

15. The victim's mother testified that she would not object to her brother (Mr. Georgius) being sentenced to a youthful offender center, and that she did not believe he would pose a threat to the community.

In view of the maturation and educational progress Mr. Georgius made while incarcerated, the evidence of his painful upbringing, and the testimony of the victim's mother, I believe this case should have been reversed and remanded for the trial court to reconsider its decision. I believe a remand was appropriate, as opposed to this Court granting the requested relief, for two reasons. First, the record in this case does not, but should, contain a current institutional assessment of Mr. Georgius' behavior and an updated presentence report. Second, the case needed to be remanded to give the trial court an opportunity to reconsider its decision under the guidelines I have enunciated.

Based upon the foregoing, I respectfully dissent.