**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-1193** (Harrison County 13-F-174-1)

**Wesley Shawn Malcomb,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Wesley Shawn Malcomb, by counsel Sam H. Harrold III, appeals the Circuit Court of Harrison County's November 27, 2019, order sentencing him to one year of incarceration for each of two counts of wanton endangerment involving a firearm, said sentences to run concurrently. However, the circuit court suspended those sentences and placed petitioner on home incarceration as a form of alternative sentence. Respondent the State of West Virginia, by counsel Gordon L. Mowen II, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and Melissa McNemar had been in a long-term relationship, during which time petitioner drove a Ford Explorer. After the relationship ended, petitioner wanted to keep the vehicle, though it was in Ms. McNemar's possession. On April 7, 2013, Ms. McNemar called the Harrison County Sheriff's Department to request help making arrangements to return the Explorer to petitioner. Deputy Zach Mealey instructed her to park the vehicle at the Spelter Fire Department and leave the key under the mat. He also instructed petitioner to wait for ten to fifteen minutes after the vehicle was dropped off before accessing it to drive home "so there wouldn't be any confrontation between the two." Ms. McNemar's friend, Shane Pierce, drove separately to the fire department so that he could drive Ms. McNemar home afterward.[1]

---

[1] According to petitioner, after the plan was in place but before they went to the fire department, Mr. Pierce called petitioner and threatened to kill him or put him in the hospital. Petitioner claims that he contacted Deputy Mealey to report the threats and asked to file a complaint, but the deputy refused to take the complaint.

Instead of waiting the ten to fifteen minutes after the Explorer was parked at the fire department, petitioner waited less than a minute before pulling into the parking lot. Mr. Pierce walked over to petitioner's car to hand him the keys, at which time petitioner pulled a gun on Mr. Pierce. Ms. McNemar yelled to petitioner to put the gun down, but petitioner struck Mr. Pierce in the head with it, repeatedly saying, "I'm going to shoot you." Petitioner also began waving the gun around, pointing it at both Mr. Pierce and Ms. McNemar. There is a dispute as to whether petitioner tried to run over Mr. Pierce with his truck, at which time Mr. Pierce threw a rock at petitioner while petitioner was seated inside his truck. At that point, Ms. McNemar called 9-1-1. The responding deputy obtained surveillance footage from the Spelter Fire Department parking lot, which showed most of the encounter at issue. When petitioner was apprehended, a loaded Glock .40 caliber magazine was recovered from his vehicle, but no gun was found. He initially denied having a firearm during the encounter but later confessed.

Petitioner was indicted on two counts of wanton endangerment involving a firearm and one count of assault. The indictment charged him with pointing a firearm at and threatening to shoot Mr. Pierce, pointing a firearm at Ms. McNemar, and assaulting Mr. Pierce by attempting to strike Mr. Pierce with his vehicle.

The State moved to suppress and redact a portion of the 9-1-1 recording, arguing that it was irrelevant and constituted inadmissible impeachment evidence. Specifically, it sought to exclude statements petitioner made from an unrelated event in which petitioner told the Harrison County Sheriff's Department that one of the victims "ha[d] been arrested a lot of times," was "a big troublemaker," and "spent a year in jail and everything else." In an additional motion, the State sought to exclude Ms. McNemar's statement made during a separate 9-1-1 call, in which she stated that she previously "g[o]t [petitioner] on domestic violence." In support of that motion, the State argued that Ms. McNemar's prior domestic violence complaint against petitioner was irrelevant. Petitioner also moved to suppress Ms. McNemar's statement made during the 9-1-1 call. The circuit court held a hearing on those motions on October 7, 2013, during which petitioner's counsel represented to the court that the State had provided a redacted version of the 9-1-1 calls and the parties were in agreement with regard to those redactions. "So we can jointly agree to dismiss [those motions] I believe." The State immediately clarified

> to make sure everything is on the record. I agree with everything [petitioner's counsel] said, but just to ensure the parties and the [c]ourt understand what I believe to be the agreement. There are two portions of the 911 call that the State had moved to redact. One is – pertains to Mr. Malcomb's statements . . . in which Mr Malcolm[sic] stated that one of the victims was, quote, unquote, "a big trouble maker, had been arrested a lot of times, and served a year in jail." I move to redact that and that has been redacted from the copy I gave to [petitioner's counsel]. The State believes that [is] impeachment evidence and irrelevant to the case at hand. In addition, one of the victims had stated that, quote, "I had to get him" – meaning Mr. Malcomb – "on domestic violence." Which again is irrelevant to the case at hand.

Petitioner's counsel did not present any objection or opposition to the State's representations.

Petitioner filed a notice of affirmative defense: self-defense. In that notice, petitioner stated that he drew his pistol and pointed it at Mr. Pierce in response to Mr. Pierce picking up and preparing to throw a cinder block brick at petitioner while in petitioner's immediate proximity, placing petitioner in fear of imminent danger, death, or serious bodily harm. Petitioner submitted a self-defense instruction to the circuit court, and the circuit court gave that instruction to the jury.

Petitioner's jury trial was held in October of 2013, and petitioner was convicted of both counts of wanton endangerment involving a firearm but acquitted of assault. He then filed a motion for post-verdict judgment of acquittal, arguing there was insufficient evidence to support wanton endangerment involving a firearm; that motion was denied by the circuit court. Petitioner was sentenced to one year of incarceration for each conviction, said sentences to run concurrently. However, the circuit court suspended those sentences and placed petitioner on home incarceration as a form of alternative sentence. On April 8, 2019, petitioner filed a renewed motion for post-verdict judgment of acquittal or, in the alternative, to reconsider his sentence. Thereafter, on November 27, 2019, petitioner was resentenced for purposes of appeal. Petitioner appeals from that order.

At the outset, we note that

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, 243 W. Va. 447, 844 S.E.2d 688 (2020).

On appeal, petitioner sets forth three assignments of error. He first argues that the circuit court committed reversible error by submitting an improper and prejudicial self-defense instruction at trial. Specifically, he contends that the circuit court's self-defense instruction was clearly erroneous because it failed to communicate all requisite elements fairly. He claims that the instruction omitted or grossly modified the element of proportionality to the danger perceived. However, as petitioner admits later in his brief, his trial attorney submitted the very instruction of which he complains. As we have found,

> petitioner waived any error regarding this jury instruction. As we stated in *Lease v. Brown,* 196 W.Va. 485, 473 S.E.2d 906 (1996), when a defendant submits the instruction, "any error stemming from its inclusion in the case has either been waived or deemed 'invited error.' " *Id.* at 488, 473 S.E.2d at 909 (internal citation omitted). Moreover, "[n]o party may assign as error the giving or the refusal to give an instruction . . . unless that party objects thereto before the arguments to the jury are begun, stating distinctly the matter to which that party objects and the grounds of the objection[.]" W.Va. R. Crim. P. 30, in part.

3

*Lewis*, 235 W. Va. 694, 703 n.24, 776 S.E.2d 591, 600 n.24 (2015). This waiver was the direct result of the jury instruction at issue being offered by [p]etitioner . . . .

*Lewis v. Ames*, 242 W. Va. 405, 410, 836 S.E.2d 56, 61 (2019). In addition, petitioner's complaint relates not to an element of the crime charged but an element of a defense asserted by petitioner during trial. We agree with the State that even if the instruction were incorrect and petitioner had not invited it, petitioner may have benefitted from the error because any alleged omission made it easier for petitioner to establish self-defense. Therefore, we find that petitioner is not entitled to relief based on the circuit court giving his requested instruction regarding his claim of self-defense.

Next, petitioner asserts that the circuit court committed reversible error when it granted the State's motion to suppress and redact portions of 9-1-1 recordings due to irrelevancy and inadmissible impeachment evidence. On October 1, 2013, the State moved to suppress petitioner's recorded statements with law enforcement that were made prior to the incident in which he stated that Mr. Pierce had been arrested a number of times and was a "troublemaker." The State argued that the statements were irrelevant under Rule 401 of the West Virginia Rules of Evidence and inadmissible under Rule 609(a)(2) of the West Virginia Rules of Evidence. Petitioner admits that his counsel, "never challenged the State's motion to suppress and stipulated to having [p]etitioner's statements redacted." Accordingly, on October 15, 2013, the circuit court entered an order granting the State's motion to suppress and redact portions of the 9-1-1 recordings and ordered the parties to stipulate to the admissibility of a redacted recording of the 9-1-1 calls if there was no objection to the redactions.

We have held that "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). Additionally, we have held:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). However, as this Court has consistently held, "[c]ounsel's failure to object forecloses appellate review of this issue, unless the circuit court's alleged error was plain error. *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995)." *State v. Jeremy S.*, 243 W. Va. 523, 530, 847 S.E.2d 125, 132 (2020). Here, petitioner's counsel not only failed to oppose the State's motion to suppress but actually stipulated

4

to the redactions at issue.[2] Thus, we find that petitioner is not entitled to relief on this ground.

Finally, petitioner argues that his convictions should be reversed because a sufficient record exists on direct appeal to establish by a preponderance of the evidence that his defense counsel was ineffective at trial. He contends that his trial counsel was deficient and objectively ineffective by allowing an incomplete jury instruction on the self-defense doctrine at trial. Without citing to the record, he asserts that "upon review of the record, there is a reasonable probability that, but for defense counsel's unprofessional error in managing the self-defense doctrine at trial, the result of the trial would have been different." He is also critical of his counsel's stipulation to the redaction of the 9-1-1 recordings.

In West Virginia, claims of ineffective assistance of counsel are governed by the two-prong standard set forth in *Strickland v. Washington,* 466 U.S. 668, 669 (1984): "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller,* 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at Syl. Pt. 6.

"When assessing whether counsel's performance was deficient, we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Id.* at 15, 459 S.E.2d at 126 (citation omitted). Further, to demonstrate prejudice, "a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result." *Id.* As a result, petitioner "bears a difficult burden because constitutionally accepted performance is not defined narrowly and encompasses a 'wide range.'" *Id.* at 16, 459 S.E.2d at 127. However, "[i]n cases involving ineffective assistance on direct appeals, intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Id.* at 14-15, 459 S.E.2d at 125-26.[3] That is the case here. Without testimony

---

[2] Petitioner does not allege that the circuit court committed plain error by granting the motion to suppress.

[3] In addition, Syllabus Point 6 of *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995) provides:

(Continued . . .)

from trial counsel, under the facts of this case, this Court is unable to determine whether petitioner received effective assistance of counsel. For these reasons, we find that petitioner is not entitled to relief from the sentence imposed.

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

As we further stated in *Miller*,

[w]hen assessing whether counsel's performance was deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. To demonstrate prejudice, a defendant must prove there is a "reasonable probability" that, absent the errors, the jury would have reached a different result. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

194 W. Va. at 15, 459 S.E.2d at 126.