**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0743** (Berkeley County CC-02-2019-F-245)

**Trevor Via,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Trevor Via, by counsel Shawn R. McDermott, appeals the Circuit Court of Berkeley County's August 26, 2020, order sentencing petitioner following his convictions for driving under the influence causing death and driving under the influence causing injury. Respondent the State of West Virginia, by counsel Patrick Morrisey and Katherine M. Smith, filed a response in support of the circuit court's order to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the early morning of January 20, 2019, petitioner was operating a motor vehicle when he veered off the edge of the roadway and crashed, killing a passenger in the car, Morissa Knott, and seriously injuring another passenger, Danielle Bentley.[1] At the time of the accident, petitioner was driving on a revoked license, which was the result of a September of 2018 conviction for driving under the influence ("DUI"). Officers arrived on scene at approximately 2:08 a.m., and sometime between then and 2:30 a.m., Trooper Simerly asked if petitioner would perform a field sobriety test, to which he consented. The officer observed a lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, the onset of nystagmus prior to forty-five degrees in both eyes, and vertical nystagmus. At approximately 2:31 a.m., Trooper Simerly administered a preliminary breath test ("PBT"), which showed that petitioner's blood alcohol content ("BAC") was 0.208. Thereafter, petitioner was arrested for DUI causing death, aggravated DUI second offense, driving revoked for DUI, possession of a controlled substance, and failure to maintain

---

[1] Ms. Knott was thrown from the vehicle and purportedly died on impact. Ms. Bentley sustained injuries to her ribs.

control of a vehicle. Trooper Simerly advised petitioner of his *Miranda* rights and transported him to the Berkeley Medical Center for a secondary chemical test via a blood draw. That draw showed that petitioner's BAC was 0.142.

Pursuant to a plea agreement, petitioner pled guilty to the felony offense of DUI causing death and the misdemeanor offense of DUI causing bodily injury. During the plea hearing, the circuit court conducted a plea colloquy and ordered that the probation office conduct a presentence investigation. Under the terms of the plea agreement, sentencing was left to the sound discretion of the circuit court. Before imposing sentence, the circuit court considered petitioner's sentencing memorandum, a letter from Mountaineer Behavioral Health, and petitioner's filings. During the sentencing hearing, petitioner called four character witnesses, each of whom discussed the impact the crash had on petitioner. The State called April Hedrick, a friend of Ms. Knott's family, who read a victim impact statement from the victim's mother. Petitioner's counsel requested that petitioner receive an alternate sentence, and petitioner apologized to the decedent's family. By order entered on August 26, 2020, the circuit court sentenced petitioner to three to fifteen years in a penitentiary for DUI causing death and twelve months in a regional jail for DUI causing injury. The circuit court ordered that the regional jail sentence be served before the penitentiary sentence and that those sentences run consecutively. Petitioner appeals from that order.

> "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010). Syl. Pt. 1, *State v. Varlas*, 243 W. Va. 447, 844 S.E.2d 688 (2020). "Additionally, we have consistently held that '[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)."

*State v. Bleck*, 243 W. Va. 293, 297, 843 S.E.2d 775, 779 (2020).

On appeal, petitioner sets forth three assignments of error, but because he combines two assignments of error into a single argument heading, we will address them accordingly.[2] Petitioner first argues that the circuit court erred in considering information regarding the offense that was not presented as evidence in the case and that was materially inaccurate. The bulk of petitioner's

---

[2] We note that petitioner's citations to the record throughout the argument section are few and far between. This Court reminds petitioner's counsel of the mandates of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides, in relevant part:

> The brief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on . . . . The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

argument as to this issue is related to the circuit court's comments regarding petitioner's speed at the time of the accident. Petitioner asserts that there is no evidence regarding his speed contained in the record. Specifically, the circuit court, during the sentencing hearing, stated,

> Had [petitioner] been driving the speed limit and slid off the road because of the snow, the car would never have flipped once let alone multiple times. The fact that the car struck a mailbox pole was just another excuse. If [petitioner] had been driving the speed limit, sliding into a pole would never cause the violent result of the car flipping out of control.

According to petitioner, the suggestion he was speeding is based upon pure conjecture without any evidentiary support. In addition, there was no accident reconstruction performed, and the State failed to present evidence of the speed limit in the area where the crash occurred. Petitioner further contends, without citing law, that a circuit court cannot take judicial notice of a car flipping impliedly being caused by speeding. Petitioner argues that, as a result, he was not put on notice of the circuit court's reliance upon this impermissible information, particularly where the factual conclusion is inaccurate.

Petitioner then argues that the circuit court improperly relied on inaccurate information regarding petitioner's BAC level. In imposing his sentence, the circuit court noted that petitioner's BAC was "two and a half times the legal limit[,]" but that statement was based upon the results of the PBT—not the subsequent blood test, which showed that petitioner's BAC was 0.142. "The results of a preliminary breath analysis shall be used solely for the purpose of guiding the officer in deciding whether an arrest should be made." W. Va. Code § 17C-5-5, in relevant part. Citing only out-of-state authority, petitioner argues that there is no indication that the PBT may be used as a sentencing factor. Thus, petitioner argues, suggesting that petitioner's BAC was two-and-a-half times the legal limit was materially inaccurate and the circuit court's impermissible use of that inaccurate information warrants vacating petitioner's sentence.

The State contends that the circuit court's consideration of speeding was cursory, at best, and carried little weight as a factor in imposing petitioner's sentence. The State also asserts that while the circuit court referenced speed twice within a few sentences, it "made no other reference to speed during its seven-page summarization and consideration of the various sentencing factors."

Regarding petitioner's claim that the court improperly considered his PBT, the State highlights that there is no evidence that the result of petitioner's PBT was "materially inaccurate," and it argues that the circuit court properly considered the PBT result in determining the appropriate sentence for petitioner's crimes. The State points out that the West Virginia Rules of Evidence do not apply to sentencing hearings. It asserts that "[i]nsofar as [p]etitioner argues that his PBT result was inadmissible evidence, that argument is irrelevant here. The issue is whether a PBT result is an 'impermissible factor' for a circuit court to consider at sentencing. *See Goodnight*, 169 W. Va. at 366, 287 S.E.2d at 505, Syl. Pt. 4." As this Court recently observed, impermissible sentencing factors include "race, sex, national origin, creed, religion, and socioeconomic status[.]" *State v. Moles*, No. 18-0903, 2019 WL 5092415, at *2 (W. Va. Oct. 11, 2019)(memorandum decision) (internal quotation and citation omitted). According to the State, the PBT result does not qualify as an impermissible factor, and there is no precedent of this Court categorizing a PBT result

as such. Further, petitioner does not argue that the PBT result is incorrect; instead, he claims that it should not have been considered by the circuit court in light of the secondary blood test, which showed a lower BAC. The State contends that because the PBT was conducted at approximately 2:31 a.m. and the blood draw was done following petitioner's arrest, being advised of his *Miranda* rights, and transport to the Berkeley Medical Center, it is expected that the second BAC test result would be lower due to the passage of time.

Petitioner's argument on appeal overstates the consideration given to petitioner's speed and his PBT result. In imposing the sentence, the circuit court heard statements from Ms. Knott's family that revealed the victim was preparing for her upcoming wedding and had a young daughter. The court set forth the numerous factors it considered before imposing the sentence, including that

> the actions of [petitioner] have caused the death of a young woman, left a small child motherless, devastated the lives of her family and caused great past and ongoing pain and suffering both physical and emotional to this family. There has to be a significant recognition of the heart-wrenching pain that [petitioner] has caused. . . . The likelihood of [petitioner] re-offending has to be evaluated. That's hard to gauge in this case but the [c]ourt is not comforted by the fact that [petitioner] was convicted of driving under the influence just six short months prior to the date of the event. [Petitioner] also has been convicted of a number of alcohol-related crimes in the short time as an adult. [Petitioner's] prior criminal record includes concealing a dangerous weapon in Maryland, public intoxication, disorderly conduct, underage consumption, possession of a controlled dangerous substance, and, as mentioned earlier, driving under the influence. . . . [Petitioner] fresh on the heels of his DUI six months earlier made the conscious decision to get behind the wheel of a vehicle [while under the influence of alcohol]. . . . [Petitioner's] acceptance of responsibility is of grave concern to the [c]ourt. While he was clearly shaken at the scene, his concern for Ms. Knott seemed to be centered around what her death meant for him. This would be a central theme when dealing with law enforcement was that he ruined his life, he was more focused on what would happen to himself than what happened to Ms. Knott and Ms. Bentley. Even more indicative of a lack of responsibility [petitioner's] demonstrated is his engagement in the yes-but game . . . There has been an undercurrent in this case of, yes, I accept responsibility, but the other three were partying right along with me. Yes, I accept responsibility, but the other three got in the car with me. Yes, I accept responsibility, but [Ms. Knott] didn't have her seatbelt on. . . . That is at best a questionable acceptance of responsibility, to some extent victim blaming.

The circuit court also addressed petitioner's continued drug use, less than two months prior to the sentencing hearing, despite receiving substance abuse treatment and shortly after he had killed Ms. Knott due to his substance abuse. It commented as to its belief that petitioner was "paying lip service to sobriety" and did not accept his "excuse of self-medicating."

While the circuit court did, briefly, mention its belief that petitioner was speeding and that petitioner's BAC was "two and a half times the legal limit," it is apparent from the sentencing hearing transcript that the other factors, specific to petitioner's criminal and substance abuse

history, were the main factors in the sentence imposed. It also considered the impact on Ms. Knott's family, in addition to the injured passenger herself. Because petitioner does not allege that his sentence was not in compliance with the applicable statutes and has failed to show that the court considered some impermissible factor, we find that petitioner's sentence is not reviewable on these grounds.

Petitioner's final assignment of error is that the circuit court failed to exercise meaningful sentencing discretion by basing the sentence on the category of the offense, rather than providing an individualized sentence particular to petitioner, and impermissibly discounting petitioner's mitigating evidence. Petitioner is critical of the circuit court's comments during sentencing that "the community needs to know that if you drink, drive and kill someone, absent some extraordinary circumstances . . ., which is lacking in this case, you will be punished to the fullest extent of the law." Further, according to petitioner, the court should be required to consider all mitigating and aggravating circumstances in each individual case specific to each defendant, rather than a general policy of maximum punishment based upon a violation of a particular statute. He also contends that he expressed remorse at the scene of the accident, agreed to cooperate with officers, and admitted to his conduct, in addition to entering a plea to spare the families from going through trial. Petitioner argues that these errors deprived him of his due process right to an individualized sentencing hearing.

We disagree. It is clear that the circuit court did not simply base its sentence on the category of the offense. Instead, it considered various, permissible mitigating and aggravating factors, particularized to petitioner, prior to imposing its sentence. It heard testimony from character witnesses who spoke to mitigating factors, and the circuit court specifically mentioned petitioner's young age and "difficult upbringing." However, the circuit court could not ignore the factors set forth above or the fact that, as part of his PSI, petitioner "advised that . . . once he turned 21, his use [of alcohol] increased to daily." He "admitted to typically drinking 6-12 beers" per day and advised that "he would drink to the point of intoxication" but denied blacking out. Although petitioner disagrees with the court's finding, that "does not automatically lead to the conclusion that the [circuit court] abused its discretion." *State v. Shafer*, 237 W. Va. 616, 621, 789 S.E.2d 153, 158 (2015).

This Court has reviewed the record before it, including the transcript of the sentencing hearing, in addition to the parties' briefs, and we find that the circuit court did not abuse its discretion in pronouncing sentence based upon the crimes for which petitioner was convicted. It is clear that the court weighed both the mitigating factors and the serious nature of the crime, particularly in light of the fact that petitioner had only months prior been convicted of DUI and continued to engage in substance abuse following the death of Ms. Knott. Again, petitioner does not allege that his sentence was not in compliance with the applicable statutes and has failed to show that the court considered some impermissible factor. Therefore, his sentence is not reviewable on appeal.

Affirmed.

**ISSUED:** January 12, 2022

5

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton