457 S.E.2d 662

Wayne Allen WILSON, Sr., Petitioner Below, Appellant,

v.

Nicholas J. HUN, Commissioner, Department of Corrections; and William Duncil, Warden, Huttonsville Correctional Center, Respondents Below, Appellees.

No. 22688.

Supreme Court of Appeals of West Virginia.

Submitted April 4, 1995.

Decided April 14, 1995.

Gregory A. Elam, Cardot Law Offices, Elkins, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Jill Jerabek, and Leslie K. Kiser, Office of the Atty. Gen., Charleston, for appellees.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Randolph County, West Virginia, entered on August 1, 1994. Contrary to the contention of the appellant, Wayne Allen Wilson, Sr., the circuit court found that the appellant was receiving adequate medical care at the Huttonsville Correctional Center, Huttonsville, West Virginia. We agree and affirm the order of the circuit court.

I

In June, 1994, the appellant, under a life sentence for murder, filed a *pro se* petition with this Court asserting that he was not

receiving adequate medical care at the Huttonsville Correctional Center. By order entered on June 21, 1994, we returned the case to the Circuit Court of Randolph County for disposition. The matter being in the nature of a proceeding in *habeas corpus*, the circuit court appointed counsel for the appellant and conducted an evidentiary hearing on July 5, 1994. Concluding that the appellant's medical care while incarcerated was adequate, if not "superior," the circuit court found the assertions of the appellant to be without merit.

The appellant's concerns are set forth in his petition for an appeal from the circuit court. The appellant indicates that, sometime before 1990, a cyst appeared upon his right hip, and he received treatment at the West Virginia State Penitentiary in Moundsville, West Virginia. In April, 1992, penitentiary authorities sent the appellant to Alan M. Ruben, M.D., a dermatologist in Wheeling, West Virginia, who concluded that although antibiotics were not alleviating the problem, the cyst or abscess could be "incised and drained." The following year, penitentiary authorities sent the appellant to Romeo D. Tan, M.D., a surgeon in Moundsville, who examined the appellant, made "no specific recommendations," and requested further examination "when swelling recurs." The requested follow-up examination with Dr. Tan was never scheduled.

In May, 1993, the appellant was transferred to the Huttonsville Correctional Center and began receiving medical treatment from Ernest Hart, Jr., M.D., Medical Director at the Huttonsville Correctional Center. Dr. Hart's treatment of the cyst included periodic incisions and drainage.

The appellant's principal argument before this Court is that he should have a surgical removal of the cyst, rather than periodic incisions and drainage. In that regard, the appellant asserts that (1) his current level of medical care at the Huttonsville Correctional Center constitutes cruel and unusual punishment under *U.S. Const.* amend. VIII and *W.Va. Const.* art. III, § 5,[1] (2) the circuit court committed error in finding that his medical care at the Huttonsville Correctional Center was adequate and (3) he should be sent outside the Huttonsville Correctional Center, pursuant to *W.Va.Code*, 25–1–16 [1972][2] for surgery, or a surgical consultation, regarding the cyst.

## II

▇▇▇ Of course, in West Virginia and elsewhere it has been recognized that prisoners, generally, have a right to medical care. *Crain v. Bordenkircher,* 176 W.Va. 338, 342 S.E.2d 422 (1986); 14B M.J. *Prisons and Prisoners* § 8 (1988); 60 Am.Jur.2d *Penal and Correctional Institutions* § 91 (1987); 72 C.J.S. *Prisons and Rights of Prisoners* § 80 (1987); Michael Mushlin, *Rights of Prisoners* 3.00 (McGraw–Hill, Inc. 2nd ed. 1993); John W. Palmer, *Constitutional Rights of Prisoners* 10.3 (Anderson Publishing Co. 3rd ed. 1985); Marvin Zalman, "Prisoners' Rights to Medical Care" 63 *Journal of Criminal Law, Criminology & Police Science* 185 (1972). Moreover, the appellant is correct in his assertion that issues concerning the medical care of prisoners may, under certain circumstances, invoke constitutional provisions against cruel and unusual punishment. *See* n. 1, *supra; Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Brown v. Briscoe,* 998 F.2d 201 (4th Cir.1993); *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990). In that regard, we stated in syllabus point 2 of *Crain, supra:*

'Certain conditions of ... confinement may be so lacking in the area of adequate

---

1. *U.S. Const.* amend. VIII provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

   Similarly, *W.Va. Const.* art. III, § 5 provides, in part, that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

2. *W.Va.Code,* 25–1–16 [1972] provides, in part:

   Whenever a convict in a state prison needs medical attention, other than mental care, not available at said prison, the warden or superintendent of said prison shall immediately notify the commissioner of public institutions [corrections], who, after proper investigation, shall cause the transfer of said convict to a hospital within the state of West Virginia properly equipped to render the medical attention necessary.

food, clothing, shelter, sanitation, medical care and personal safety as to constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution.' Syllabus Point 2, *Hickson v. Kellison,* 170 W.Va. 732, 296 S.E.2d 855 (1982).

*See also* syl. pt. 1, *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 186 S.E.2d 220 (1972).

■ However, in this case the record clearly demonstrates that, while incarcerated at the West Virginia State Penitentiary and at the Huttonsville Correctional Center, the appellant received considerable attention and treatment for a variety of medical complaints, including the cyst upon his right hip. The appellant's medical file, attached to this appeal, is voluminous, and, as the testimony brought out at the July 5, 1994, hearing indicates, the appellant is under continuing care.[3]

In fact, the testimony of Dr. Hart of the Huttonsville Correctional Center suggests that the appellant's complaints about his right hip have been intermittent, and the appellant has not been consistent in following the instructions of medical authorities relating to his care. At least one other cyst or abscess upon the appellant was successfully treated by Dr. Hart, by way of incision and drainage. The record, therefore, supports the conclusion of the circuit court.

■ In the context of a challenge to a criminal conviction, this Court held in syllabus point 1 of *State ex rel. Postelwaite v.*

*Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976), that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 2, *State ex rel. Kidd v. Leverette,* 178 W.Va. 324, 359 S.E.2d 344 (1987).

■ Although the appellant does not challenge his conviction in this proceeding, this Court recognized, generally, in syllabus point 6 of *Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974), that "[t]he findings of fact of a trial court are entitled to peculiar weight upon appeal and will not be reversed unless they are plainly wrong." *See also* syl. pt. 3, *Serge v. Matney,* 165 W.Va. 801, 273 S.E.2d 818 (1980): "Findings of fact by a trial court will not be set aside unless clearly wrong."

The evidence in this case supports the ruling of the Circuit Court of Randolph County concerning the medical care provided to the appellant at the Huttonsville Correctional Center.[4] Accordingly, the final order of August 1, 1994, is affirmed.

Affirmed.

___

3. At the evidentiary hearing of July 5, 1994, before the circuit court, Dr. Hart testified:
Q. —for his condition—are you going to continue to monitor his condition?
A. Yes.
Q. So if there is any change or it becomes necessary for him to have some other type of treatment you would provide that?
A. Yes.
Q. And if you couldn't provide it would you allow him to be sent out of the Institution?
A. Without question.
. . . .
Q. But you saw no reason for Mr. Wilson to have a surgery consult [concerning a cyst problem]?

A. No ... indication for—for an outside consultant at this point, no.

4. In his initial *pro se* petition and at the July 5, 1994, evidentiary hearing, the appellant focused upon the cyst or abscess upon his right hip. However, the record also indicates that the appellant may be under some discomfort from a broken nose. Although the review of the testimony and exhibits by the circuit court encompassed the providing of medical care to the appellant, generally, we trust that Dr. Hart will monitor the appellant's condition as to that additional problem.