541 S.E.2d 21

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Levi Sam SHAW, Defendant
Below, Appellant.

No. 27471.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 2000.

Decided Oct. 31, 2000.

Dissenting Opinion of Justice
Starcher Jan. 5, 2001.

Mark D. Sergent, Spencer, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Asst. Attorney General, Charleston, for Appellee.

PER CURIAM:

Levi Sam Shaw appeals from the September 13, 1999, order of the Circuit Court of Roane County denying his motion for reconsideration of sentencing in connection with his previous plea of guilty to charges of first and fourth degree arson. Appellant argues that the trial court abused its discretion in initially denying his motion for probation and in subsequently denying his motion for reconsideration. Upon review of the record in this matter, we find no error and accordingly, affirm.

I. Factual and Procedural Background

Between the period of April 13, 1998, and May 19, 1998, Appellant, who had just turned eighteen, set a series of five fires. Appellant, a member of the Spencer–Roane County Vol-unteer Fire Department, admitted his involvement in the fire-setting,[1] which involved three homes, a barn, and a trash dumpster. After each fire had been set, Appellant would call or have someone else call the fire department and then he would proceed to the fire to aid in its extinguishment.

Following his arrest and arraignment in late May 1998 for three counts of first degree arson of a residence, attempted arson of a structure, and attempted third degree arson of personal property, Appellant was indicted on three counts of first degree arson and three counts of conspiracy to commit a felony. Appellant entered a plea of guilty on January 11, 1999, to the charges of first degree arson and fourth degree arson. At the sentencing hearing held on February 19, 1999, the trial court sentenced Appellant to ten years for the first degree arson conviction and two years for the fourth degree arson conviction.[2] The sentences were to run concurrently and Appellant was further ordered to pay restitution in the amount of $61,273.

Appellant began serving his sentence at the Anthony Center for Youthful Offenders ("Anthony") at Neola, West Virginia, at an unspecified date following the sentencing hearing. On July 15, 1999, Appellant was transferred from Anthony to the Central Regional Jail at Sutton, West Virginia. On the date of the transfer, the warden at Anthony authored two separate documents, explaining that Appellant was not sentenced pursuant to the Youthful Offenders Act, West Virginia Code §§ 25–4–1 to –10 (Supp.2000), and, therefore, was "unfit"[3] for continued housing

---

1. Appellant was assisted in the fire-setting by another juvenile friend named D.J.

2. In the original sentencing order, dated February 19, 1999, the trial court stated: "[T]he public weal does require incarceration in this case and that there is nothing in the record of this case which would support a finding that the defendant is not likely to again to [sic] be involved in criminal conduct."

3. With the amendments to this section effective June 9, 1999, a "young adult offender [who] proves to be an unfit person to remain in the center" "in the opinion of the warden" "shall be returned to the committing court to be dealt with further according to law." W.Va.Code § 25–4–6. Because Appellant concedes that he was not sentenced pursuant to the Youthful Offenders Act (and because we do not find the sentencing court to have abused its discretion in opting to sentence him as an adult), we do not address the indirectly raised issue of whether an individual can be deemed "unfit" for continued placement at a youthful offenders center based on the center's inability to provide appropriate medical care. There is no question, as we observed in *Nobles v. Duncil,* 202 W.Va. 523, 505 S.E.2d 442 (1998), "that a governmental unit ... has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" *Id.* at 533, 505 S.E.2d at 452 (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d

at such facility and, also, that Anthony lacked appropriate medical personnel to treat Appellant's diabetic condition.

Appellant filed a motion for reconsideration of sentencing on July 21, 1999, asserting that he was a good candidate for probation and was wrongly denied same. At a brief hearing on the motion for reconsideration on August 9, 1999, Appellant's counsel apprised the trial court of his client's diabetic condition. The matter was continued until September 13, 1999, to permit the retrieval and review of Anthony's medical records pertinent to Appellant. At the September 13, 1999, hearing, the circuit court took testimony from Appellant on the issue of his diabetic condition and the nature of his required treatment.

Despite the circuit court's initial ruling from the bench during the September 13, 1999, hearing that Appellant should be transferred back to Anthony,[4] the court reconsidered this position and ultimately ruled that the initial order sentencing Appellant to a specified term of incarceration was to remain in place. Appellant seeks a reversal of the trial court's September 13, 1999, order denying his motion for reconsideration of sentencing.

251 (1976)); see also Wilson v. Hun, 193 W.Va. 639, 640, 457 S.E.2d 662, 663 (1995) (commenting that "issues concerning the medical care of prisoners may, under certain circumstances, invoke constitutional provisions against cruel and unusual punishment"). We note additionally that, although the warden at Anthony did reference the center's inability to provide necessary medical services to Appellant, he also identified, as a basis for the transfer, the trial court's failure to sentence Appellant as a youthful offender.

4. This ruling followed a discussion of the July 15, 1999, letter from the warden at Anthony finding Appellant "unfit" for continued placement since he had not been sentenced as a youthful offender. See W.Va.Code § 25-4-6. Upon first learning of the sentencing issue, the trial court commented: "Let's get the magic words and send him back to the Anthony Center."

5. Those factors were premised on these statements:

1. He had just turned 18 before the instant offenses occurred.

## II. Standard of Review

In syllabus point one of State v. Head, 198 W.Va. 298, 480 S.E.2d 507 (1996), we articulated the applicable standard of review:

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a de novo review.

## III. Discussion

### A. Denial of Probation Request

Appellant argues that the trial court abused its discretion at the initial sentencing phase in selecting incarceration over probation and in not sentencing Appellant as a youthful offender. See W.Va.Code § 25-4-6. As support for his position that he was a good candidate for probation, Appellant cited eleven factors.[5] Other than this list of why he would have been a good candidate for

2. He had no prior criminal record either as a juvenile or as an adult.

3. He had cooperated with the investigative officer and had signed a written statement of his involvement in the instant offenses.

4. He had ceased contact or association with the other person that was involved in the instant offense.

5. He had offered to make restitution to the victims in this action.

6. He exhibited remorse for his actions and publicly apologized for his actions at his sentencing hearing to the victim present.

7. He exhibited responsibility for his actions.

8. He had served in the Central Regional Jail approximately 130 days of confinement as of the sentencing date.

9. His education as a high school student was interrupted by the instant offenses and he needed to continue his education.

10. He had plans and interest in learning the building construction trades and needed vocational training.

11. He had family support and was living with his mother and attending high school prior to his arrest.

probation, Appellant offers no additional argument in advancement of this claim.[6]

■ After refuting either the accuracy or the significance of the eleven factors relied upon by Appellant,[7] the State discusses the law as it relates to the discretion of a trial judge in rendering a criminal sentence. Focusing initially on the inherent limitations imposed on appellate review of sentencing, the State cites syllabus point seven of *State v. Layton*, 189 W.Va. 470, 432 S.E.2d 740 (1993): " 'Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review.' Syllabus point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Continuing its recitation of the law, the State quotes from our recent decision in *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997), wherein the legal underpinnings of probation were fully explored:

We have recognized that probation is a privilege of conditional liberty bestowed upon a criminal defendant through the grace of the circuit court. *See, e.g., State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 32–33, 239 S.E.2d 660, 661–62 (1977) (" '[A] defendant convicted of a crime has no absolute right to probation, probation being·a matter of grace only, extended by the State to a defendant convicted of a crime, in certain circumstances and on certain conditions.' " (quoting *State v. Loy*, 146 W.Va. 308, 318, 119 S.E.2d 826, 832 (1961))); Syl. pt. 1, *State v. Rose*, 156 W.Va. 342, 192 S.E.2d 884 (1972) ("Probation is a matter of grace and not a matter of right."); *State ex rel. Riffle v. Thorn*, 153 W.Va. 76, 81, 168 S.E.2d 810, 813 (1969) (" 'Probation or suspension of sentence comes as an act of grace to one convicted of a crime[.]' " (quoting *Escoe v. Zerbst*, 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566, 1568 (1935))); Syl. pt. 2, *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 165 S.E.2d 90 (1968) ("Probation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime.").

200 W.Va. at 364, 489 S.E.2d at 746.

■ We explained further in *Duke* that,

the decision as to whether the imposition of probation is appropriate in a certain case is entirely within the circuit court's discretion. The West Virginia Legislature has established that "[a]ny circuit court of this State shall have authority . . . to place on probation any person convicted of a crime." W.Va.Code § 62–12–1 (1975) (Repl.Vol.1992). Likewise, W.Va.Code § 62–12–3 (1988) (Repl.Vol.1992) specifies the discretionary nature of the circuit court's authority to suspend either the imposition or execution of a sentence of incarceration and to place the defendant on a period of probation. . . .

200 W.Va. at 364, 489 S.E.2d at 746. "Except for clear statutory exceptions, this legislative grant of power clearly places the matter of probation within the sound discretion of the trial court." *State v. Wotring*, 167 W.Va. 104, 118, 279 S.E.2d 182, 192 (1981); *accord State v. Simon*, 132 W.Va. 322, 348, 52 S.E.2d 725, 738 (1949) (concluding that "the matter of suspending sentence or placing the defendant on probation was within the discretion of the trial court"). The law remains, as articulated in syllabus point two of *State v. Shafer*, 168 W.Va. 474, 284 S.E.2d 916 (1981), that "[t]he decision of a trial court to deny probation will be overturned only when, on the facts of the case, that decision constituted a palpable abuse of discretion."

In support of its position that the trial court did not abuse its discretion in denying Appellant probation, the State maintains that the lower court fully articulated its reasons

---

**6.** He similarly offers no law or further argument in support of his contention that the trial court erred in not sentencing him as a youthful offender.

**7.** To illustrate, the State points out that Appellant had dropped out of high school in the tenth grade and not as a result of the arson convictions. The State cites Appellant's testimony from the sentencing hearing on the issue of remorse and suggests that the emphasis of Appellant's remorse stems more from being separated from his family than from the illegal acts he committed. In addition, the State points out that Appellant's agreement to make restitution was prompted by the terms of the plea agreement, rather than from any voluntary offer of payment.

for imposing incarceration rather than probation; the lower court did not rely on any impermissible factors in sentencing Appellant; the trial court's imposition of sentence was within statutory limits; and the severity of the underlying acts of arson merit punishment more severe than probation. Having reviewed the record on this issue in conjunction with the arguments raised, we find no abuse of discretion in the trial court's denial of probation.

■ Just as a trial court's decision to grant or deny probation is subject to the discretion of the sentencing tribunal, so too is the decision whether to sentence an individual pursuant to the Youthful Offenders Act. The determinative language of West Virginia Code § 25–4–6 is stated indisputably in discretionary terms: "[T]he judge of any court ... **may** suspend the imposition of sentence ... and commit the young adult to the custody of the West Virginia commissioner of corrections to be assigned to a center." *Id.* (emphasis supplied). Since the dispositive statutory term is "may," there can be no question that the decision whether to invoke the provisions of the Youthful Offenders Act is within the sole discretion of the sentencing judge. *See State v. Allen,* 208 W.Va. 144, 160, 539 S.E.2d 87, 103 (1999) (recognizing that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court"); *accord State v. Richards,* 206 W.Va. 573, 575, 526 S.E.2d 539, 541 (1999) (stating that Youthful Offenders Act "grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center"); *see also State v. Hersman,* 161 W.Va. 371, 242 S.E.2d 559

(1978) (discussing factors to be considered by sentencing judge in determining whether an individual should be sentenced as a youthful offender). Based on the record before us, we find no abuse of discretion in the trial court's decision not to sentence Appellant as a youthful offender.[8]

### B. Denial of Motion for Reconsideration

■ In support of his contention that the lower court wrongly refused to grant his Motion for Reconsideration,[9] Appellant offers no separate grounds other than those asserted in support of his probation denial argument. The State is accurate in its declaration that Appellant fails to identify any specific basis, other than denial of the requested relief, for the trial court's purported abuse of its discretion in denying his Motion for Reconsideration. Since Appellant has failed to offer any grounds in support of this assignment, we are constrained to conclude that the trial court acted within its discretion in ruling on the Motion for Reconsideration. *See Head,* 198 W.Va. at 299, 480 S.E.2d at 508, syl. pt. 1.

Based on the foregoing, the decision of the Circuit Court of Roane County is hereby affirmed.

Affirmed.

STARCHER, Justice, dissenting:

(Filed Jan. 5, 2001)

The sole reason that this young man was "sent back" from the Anthony Center was because he has diabetes; and the Anthony Center didn't want to be responsible for treating his diabetic condition. The omission in the sentencing order by the sentencing judge of the proper "magic words" was mere-

---

**8.** We do observe, however, that the lower court's initial sentencing order, entered on February 19, 1999, contains a recommendation that "if possible," Appellant should be permitted to "serve as much time of this sentence ... at the Anthony Center for Youthful Offenders." The original sentencing order, however, failed to comply with the statutory directives of West Virginia Code § 25–4–6, which require the trial court to "suspend the imposition of sentence" and "commit the young adult ... to a center." When given a chance to correct this "mistake" in sentencing, the trial court chose not to amend the order. The September 13, 1999, order states that "the

original Sentencing Order entered on the 19th day of February, 1999, remains in full force and effect."

**9.** Appellant raised a third assignment of error, which we reject without discussion, in which he asserted that the trial court's refusal to grant his request for probation invoked issues of disproportionate sentencing. *See* Syl. Pt. 5, *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983); Syl. Pt. 5, *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981).

ly an inadvertent technical omission that the circuit court quickly corrected.

However, the circuit court didn't want to require the Anthony Center to treat the defendant's diabetes; and the circuit also didn't want to put the defendant on probation. So he was sentenced to a prison term, at the taxpayers' expense.

I agree with the circuit court that probation *may* not have been a good choice. But I entirely disagree with the circuit court's refusal to make the Anthony Center treat the defendant's diabetes. The law is clear that people should not be denied an otherwise appropriate post-conviction placement, merely because of a medical disability.

I would instruct the circuit court to require the Anthony Center to provide treatment for the defendant's diabetes.