# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0884** (Randolph County 14-F-9)

**Jared Michael Iseli,**
**Defendant Below, Petitioner**

**FILED**

**September 19, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jared Michael Iseli, by counsel Philip Isner and Jeremy Cooper, appeals the Circuit Court of Randolph County's August 10, 2015, order sentencing him to prison for fifteen to thirty-five years, a fine, restitution, and additional terms of sex-offender registration and supervision upon his release from prison. The State, by counsel Shannon Frederick Kiser, filed a response and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) considering an allegedly impermissible factor at sentencing, namely his prior sexual conduct and his children; (2) relying on allegedly inaccurate information at sentencing; (3) failing to sentence petitioner to a youthful offender program; and (4) committing cumulative error causing him prejudice.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2013, petitioner, then twenty years old, was arrested for allegedly having sexual intercourse on two occasions with an eleven-year-old girl. During an interview with police, petitioner admitted that he and the victim had sexual intercourse on two occasions. However, petitioner denied knowing that the victim was eleven years old. When police informed him of her age, petitioner responded that she claimed she was thirteen years old.[1] It appears that petitioner and the victim met at a public park and, thereafter, continued contact through on-line social media. On both occasions, petitioner arranged to pick the victim up at her home after her parents had gone to sleep, drive her back to his residence, engage in sexual intercourse, and drive her back to her neighborhood. Also on both occasions, petitioner dropped her off far enough from her home to avoid being seen. The victim's parents discovered the victim missing during the second occasion, and her father found her walking back to their home after petitioner

---

[1]While petitioner reported that the victim told him she was thirteen years old, it is undisputed that the victim's true age at that time was eleven years old.

1

dropped her off. The victim apparently reported petitioner's conduct to her parents and provided further details during a subsequent forensic interview.

In February of 2014, petitioner was indicted on two counts of first-degree sexual assault. Following the indictment, petitioner was evaluated by Dr. Bobby Miller, a forensic psychologist. Dr. Miller's report noted that petitioner had a sexual history with multiple females, including the teenage "nonmarital" mothers of his two children, and that he had a low risk of reoffending.

In November of 2014, petitioner entered into a plea agreement with the State by which he would plead guilty to one count of first-degree sexual assault and the remaining count would be dismissed. At the conclusion of petitioner's plea hearing, the circuit court accepted his guilty plea and scheduled the matter for sentencing. The circuit court also ordered the department of adult probation to prepare a pre-sentence investigation report ("PSI").

In January of 2015, the circuit court granted a motion to continue petitioner's sentencing hearing on the grounds that the probation officer had not timely disclosed the PSI. After petitioner properly received the PSI, he filed written objections to it citing what he claimed were factual inaccuracies and erroneous conclusions.

The circuit court held a sentencing hearing the following month. At the outset of that hearing, petitioner placed his objections to the PSI on the record. As they relate to this appeal, he objected to the PSI as follows: (1) that it inaccurately listed the ages of the two women with whom he had prior sexual relationships such that they seemed younger than they were;[2] (2) that the conclusion that he displayed a pattern of preying on underage girls was incorrect and based on the inaccurate ages reflected therein; (3) that it inaccurately reflected the circumstances by which he met the victim; (4) that it incorrectly provided that petitioner knew the victim was thirteen years old at the time they had sexual intercourse when, according to his argument, she told him she was thirteen only *after* their final sexual encounter; and (5) that it inaccurately reflected his work history and ability to remain employed.

Following petitioner's objections to the PSI at the sentencing hearing, the circuit court discussed each of those objections with the parties and the probation officer who prepared the PSI. The circuit court then heard from several witnesses, including petitioner's mother, who testified that he had a positive character, and a police officer, who testified about petitioner's

---

[2]Petitioner repeatedly claims that the circuit court and others inaccurately stated the ages of his children's mothers in these proceedings. However, petitioner fails to relay where in the record these ages were correctly set forth below. From a review of the record on appeal, the ages of petitioner and these two women at the time of each child's conception and birth are not easily discernable. Even petitioner's own expert witness incorrectly informed the circuit court at the final sentencing hearing that, at the time of conception for "the second [child], [petitioner] was 19[,] and [the child's mother] was 19." As to his first child, it appears that petitioner was sixteen at the time of conception and birth and that his first child's mother was thirteen at the time of conception and fourteen at the time of birth. As to the second child, it appears that petitioner was nineteen at the time of conception and twenty at the time of birth and that his second child's mother was seventeen at the time of conception and eighteen at the time of birth.

2

statement to police around the time of his arrest wherein he admitted that the victim told him she was under the legal age of consent. At the conclusion of the hearing, the circuit court determined that it had insufficient information to proceed with sentencing. As such, the circuit court ordered petitioner to undergo an evaluation for diagnosis and classification with the Division of Corrections ("DOC"). Further, the probation officer was ordered to respond in writing to petitioner's objections to the PSI. The sentencing hearing was rescheduled.

Soon thereafter, the probation officer filed a written response to petitioner's objections, which was accompanied by an updated PSI, and the DOC submitted its diagnosis and classification for petitioner. In his written response, the probation officer admitted that he inaccurately reflected the women's ages in the prior PSI. He maintained that the remaining facts and conclusions were accurate to the best of his belief. The DOC's report noted petitioner's prior sexual relationships and his children and recommended that petitioner receive alternative sentencing or placement in a youthful offender program.

In June of 2015, the circuit court held the final sentencing hearing. At the hearing, the circuit court again heard from several witnesses, including petitioner's mother, Dr. William Fremouw (a psychologist petitioner retained to provide a sex-offender evaluation), and the victim's father. Dr. Fremouw, who also prepared a written report, testified that petitioner demonstrated a low risk to reoffend.[3] In both his testimony and report, Dr. Fremouw noted petitioner's sexual history with multiple teenage girls and the fact that he had children as a result of those relationships. However, unlike the PSI, Dr. Fremouw concluded that petitioner did not show a pattern of selecting underage girls because petitioner was himself underage or an adult teenager during those prior relationships. Dr. Fremouw recommended that petitioner be sentenced to an aggressive outpatient treatment program or a youthful offender program. At the conclusion of Dr. Fremouw's testimony, the circuit court asked him whether he had reviewed the information from the PSI that petitioner (1) "continues to select young underage females for sexual partners and often impregnates them"; (2) "has a poor work history"; (3) "[a]rticulates little remorse for his actions"; and (4) "has present [sic] bond violation for the pending domestic battery charge of [one of the mother's of his children]."[4] In response to the circuit court's question, Dr. Fremouw, and later petitioner's counsel, argued that the probation officer was incorrect to conclude in the PSI that petitioner selects underage females for sexual partners, given the incorrect ages listed in the first PSI.[5]

At that hearing, the victim's father also testified that after petitioner's criminal conduct the victim attempted suicide; was relocated to a different school "because of threats and

---

[3]In apparent contradiction to his testimony, Dr. Fremouw's written report indicates that petitioner demonstrated a low-to-moderate risk to reoffend.

[4]The nature and outcome of the domestic battery charge referenced by the circuit court are not clear from the record on appeal.

[5]Neither Dr. Fremouw nor petitioner's counsel responded fully and substantively to the circuit court's question as it related to petitioner's work history, remorse, or domestic violence charge.

intimidation" from petitioner's supporters; and was in counseling for over one year. The victim's father also characterized petitioner as having been "stalking" and "cyberstalking" his daughter—characterizations to which petitioner objected. In rebuttal to the victim's father's testimony, petitioner submitted messages between petitioner and the victim that he claimed contradicted the characterizations that he stalked or cyberstalked her.

Following the introduction of evidence at the final sentencing hearing, petitioner moved for alternative sentencing or placement in a youthful offender program. In support of his motion, petitioner stated that a lengthy prison term would not allow him to support his two young children. Conversely, the State requested that petitioner be sentenced to the maximum prison term permitted by law. In pronouncing petitioner's sentence, the circuit court noted that "[t]he thing that bothers me the most in this case is a 20-year-old man having sex with an 11-year-old girl, and he's already had sex with two other women and had illegitimate children with both of them." Thereafter, the circuit court sentenced petitioner to the maximum prison term and also imposed court costs, restitution, sex offender registration, HIV testing, and fifty years of supervised release. This appeal followed.

Generally, our standard of review for the circuit court's findings and rulings in a criminal case is as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 641, 535 S.E.2d 484, 485 (2000). Where specific standards of review are necessary to discuss petitioner's assignments of error, we provide them below.

On appeal, petitioner first assigns error to the circuit court's consideration of his non-marital, sexual relationships with two young women and the resulting children born "out of wedlock." In sum, petitioner argues that his "prior procreative history is an impermissible sentencing factor, because it penalizes him for constitutionally protected conduct." We have often explained that "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 3, *State v. Georgius*, 225 W. Va. 716, 717, 696 S.E.2d 18, 19 (2010). It is undisputed that petitioner's sentence was within statutory limits. Therefore, the threshold question in our review of this issue is whether the circuit court based its sentence on an impermissible factor.

In support of his claim, petitioner cites the circuit court's statement at the final sentencing hearing regarding his "sex with two other women" and the resulting "illegitimate children" and

as well other references made to the women throughout the underlying proceedings.[6] We first note that it is apparent from the record on appeal that petitioner's sexual history and children were not the primary focus of the circuit court's consideration at sentencing. To the contrary, there were a host of factors, such as the substantial negative impact petitioner's criminal conduct had on the victim's life, that were of serious import at the sentencing phase of this case. Particularly, the circuit court seemed justly concerned with the fact that petitioner was almost twice the age of his victim. However, to the extent the circuit court's comment rose to the level of a sentencing factor, we find no error.

Given the particular circumstances of this case, which involved a sex-crime committed against an eleven-year-old victim, the circuit court did not commit reversible error in considering petitioner's prior sexual history with two undisputedly teenage girls (notwithstanding his own age at the time of those relationships) and the circumstances by which he had two children with them. Several grounds in both law and fact undergird our conclusion. While petitioner repeatedly asserts that there was nothing illegal about his sexual history and procreation and, therefore, they were impermissible sentencing factors, he fails to cite any authority to show that a sentencing court may only consider illegal conduct at the time of sentencing. To the contrary, sentencing courts consider many factors, such as work history and the victim's age, at the time of sentencing that do not by themselves constitute illegal conduct. In apparent support of his argument, petitioner cites *United States v. Tucker*, 404 U.S. 443 (1972), in his discussion of this issue; however, that case does not stand for the proposition that a sentencing court may only consider illegal conduct at the time of sentencing. In *Tucker*, the sentencing court erroneously considered two prior convictions that had been unconstitutionally imposed and, thus, reversed by a higher court. The facts underlying the *Tucker* decision are wholly distinguishable from the case at bar. Here, the circuit court did not enhance its sentence based on prior convictions that were invalid. Hence, we find petitioner's reliance on *Tucker* to be misplaced.

Moreover, petitioner's nonmarital relationships and children were referenced in several reports and the testimony of several witnesses, including petitioner's own expert, without objection. It is the rare case where we will find error in the circuit court's consideration of properly admitted evidence without an objection to its admission. We have often explained that the requirement for a party to raise or waive an objection is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989). With the exception of objections to the ages of his sexual partners and conclusions drawn from those ages in the PSI, which were addressed before the circuit court, at no time during petitioner's case did he object to the admission of evidence of his sexual history or the circumstances of his children's conception and birth.

Further, petitioner's claim ignores his own argument that he should have been granted alternative sentencing because his children needed their father. In that way, petitioner directly asked the circuit court to consider his children and their circumstances as factors in its sentencing decision. Where petitioner sought the circuit court's consideration of his children at sentencing,

---

[6]Petitioner cites the circuit court's attempts in the underlying proceedings to clarify that the two women with whom petitioner had children were not the victims of any criminal conduct.

he cannot now complain of error in the circuit court's decision to do so. *See State v. Crabtree*, 198 W.Va. 620, 627 482 S.E.2d 605, 612 (1996) (stating that "[h]aving induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences"). Consequently, we find that the circuit court's sentencing order was not based on any impermissible factor, and, therefore, we will not review the same.[7]

Next, petitioner argues that the circuit court erred in relying on allegedly inaccurate information at sentencing. A defendant has a due process right to be sentenced on the basis of accurate information. *Fox v. State*, 176 W.Va. 677, 682, 347 S.E.2d 197, 202 (1986). In this case, petitioner claims that the circuit court considered inaccurate information in three forms: (1) "misapprehensions . . . concerning pertinent facts of the [p]etitioner's conduct[;]" (2) inaccurate ages for the two women with whom petitioner had children, as relayed in the first PSI; and (3) inaccurate information provided in the testimony of the victim's father. Following our review of these arguments and the record on appeal, we find that the circuit court did not rely upon false information in sentencing petitioner such that a due process violation occurred.

As to the first form of allegedly false information, it is unclear from petitioner's argument what information was allegedly misapprehended by the circuit court concerning petitioner's conduct. Instead of detailing any such information in his argument to this Court, petitioner attempts to cite to a former section of his brief and "incorporate[] [it] into this section by reference." However, the former section he attempts to incorporate does not detail any apparent "misapprehensions" by the circuit court. Given petitioner's failure to set forth a factual basis for his argument, we find no merit to his claim that the circuit court misapprehended petitioner's conduct at sentencing.

As to the second form of allegedly false information, the record is abundantly clear that the circuit court went to great lengths to give petitioner an opportunity to voice his corrections about the ages of his sexual partners as reflected in the first PSI. Petitioner admits that "[t]his inaccuracy was actually corrected" by the probation officer in an updated PSI. Although, while the probation officer corrected the women's ages in the updated PSI, he still concluded that petitioner demonstrated a pattern of selecting underage females as sexual partners. However, despite acknowledging that the PSI was updated, petitioner claims that the circuit court "spent much of the final sentencing hearing operating as though that discredited information was correct." We disagree. The circuit court did not state the women's ages in its sentencing pronouncement nor in its subsequent sentencing order. The only reference the circuit court made

---

[7]We further note out that even assuming the circuit court's consideration of petitioner's sexual history and "illegitimate" children were impermissible, it would be harmless error. *See* Syl. Pt. 13, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995) (holding that "[i]n the realm of a nonconstitutional error, the appropriate test for harmlessness is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence independently was sufficient to support the verdict and the judgment was not substantially swayed by the error"). There was substantial evidence presented below separate and apart from petitioner's sexual history and children that supports the circuit court's sentencing decision. Therefore, assuming the circuit court's consideration of that evidence were impermissible, we would find no reversible error.

to the women's ages at the final sentencing hearing was in asking petitioner's expert if he had reviewed the probation officer's conclusion about petitioner's pattern of selecting "underage" women as sexual partners. The circuit court then heard the expert's answer and petitioner's counsel's response on the issue and stated "[a]ll right." It is undisputed that both women were, in fact, under the age of eighteen when they first engaged in sexual relations with petitioner, notwithstanding his own age. Following our review of this claim, we find no inaccurate information before the circuit court as it relates to the ages of petitioner's prior sexual partners.

As to the final form of allegedly false information, petitioner claims that the victim's father falsely testified about how petitioner and the victim met and about petitioner "stalking" or "cyberstalking" the victim. However, petitioner concedes that the victim's father was permitted to testify at the sentencing hearing, and he does not dispute that the circuit court permitted him to submit rebuttal evidence after the victim's father testified to correct any portion of that testimony with which he disagreed. Notably, petitioner does not cite any portion of the circuit court's sentencing pronouncement or sentencing order that relied upon information he claims was false in the testimony of the victim's father. The reportedly false information in the victim's father's testimony was properly contested and apparently disregarded by the circuit court. Consequently, the record does not support the conclusion that the circuit court sentenced petitioner based on the false information in the victim's father's testimony.

Petitioner's third argument on appeal is that the circuit court erred in denying his motion to be complete his sentence in a youthful offender program. We have held as follows:

> Just as a trial court's decision to grant or deny probation is subject to the discretion of the sentencing tribunal, so too is the decision whether to sentence an individual pursuant to the Youthful Offenders Act. The determinative language of West Virginia Code § 25-4-6 is stated indisputably in discretionary terms: "[T]he judge of any court . . . **may** suspend the imposition of sentence . . . and commit the young adult to the custody of the West Virginia commissioner of corrections to be assigned to a center." *Id.* (emphasis supplied). Since the dispositive statutory term is "may," there can be no question that the decision whether to invoke the provisions of the Youthful Offenders Act is within the sole discretion of the sentencing judge. *See State v. Allen*, 208 W.Va. 144, [157], 539 S.E.2d 87, [100] (1999) (recognizing that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court"); *accord State v. Richards*, 206 W.Va. 573, 575, 526 S.E.2d 539, 541 (1999) (stating that Youthful Offenders Act "grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center") (citation omitted).

*State v. Shaw*, 208 W.Va. 426, 430, 541 S.E.2d 21, 25 (2000) (emphasis in original). As explained above, "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008). Upon review of the record on appeal, we find that the circuit

court sentenced petitioner within the statutory limits and that the sentence was not based on any impermissible factor. The circuit court was clearly within its discretion to decline to sentence petitioner to a youthful offender program. Therefore, we find no merit to petitioner's third assignment of error.

Last, petitioner argues that cumulative error in the proceedings below violated his rights to due process of law. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."). In light of our rulings on petitioner's first three grounds for relief, petitioner's final assignment of error must fail. We have found no error in the record before us. As such, we reject petitioner's argument under the cumulative error doctrine.

For the foregoing reasons, the circuit court's August 10, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **September 19, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II