# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0970** (Berkeley County CC-02-2018-F-34)

**Brian C. Clark,**
**Defendant Below, Petitioner**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brian C. Clark, by counsel B. Craig Manford, appeals the Circuit Court of Berkeley County's October 3, 2018, order sentencing him to an effective term of seven to twenty-eight years of incarceration following the entry of his guilty plea to one count of second-degree robbery and two counts of conspiracy to commit robbery. The State of West Virginia, by counsel Elizabeth Grant, filed a response. On appeal, petitioner argues that the circuit court erred in sentencing him to incarceration rather than committing him to the Anthony Correctional Center for Youthful Offenders ("Anthony Center").

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, petitioner and an accomplice donned masks and entered two different convenience stores while a second accomplice acted as a lookout. In both stores, petitioner pointed a gun at the store clerks and demanded money, though the gun was later determined to be a BB gun. Petitioner and the accomplice removed money from the cash registers and stole lottery tickets and cigarettes. Shortly after the robberies, law enforcement officers began pursuing petitioner and his accomplices. A chase ensued, and petitioner was apprehended after the car he was in crashed. Money, cigarettes, and lottery tickets were recovered from the car.

In February of 2018, petitioner was indicted on two counts of first-degree robbery, two counts of conspiracy to commit robbery, and two counts of use of a firearm during the commission of a felony offense. On June 13, 2018, petitioner entered into a plea agreement with the State wherein he agreed to plead guilty to one count of second-degree robbery and two counts of

1

conspiracy to commit robbery in exchange for the State's agreement to dismiss the remaining counts in the indictment. The plea agreement bound the circuit court to either sentence petitioner to an effective sentence of seven to twenty-eight years of incarceration or suspend the sentence in favor of committing petitioner to the Anthony Center.[1]

During petitioner's August 10, 2018, sentencing hearing, his attorney argued that petitioner should be committed to the Anthony Center, noting that petitioner was only twenty years old at the time of sentencing. Counsel argued that petitioner had been abused by his mother as a child, but became close with his step-mother after his father remarried. However, shortly before the robberies, petitioner's father and step-mother divorced, and petitioner was hurt by the divorce. Counsel also noted that petitioner had graduated from high school and maintained some employment. Given petitioner's young age, counsel argued that a prison sentence would have a "hardening" effect and make him more susceptible to criminal activity later in life. As such, commitment to the Anthony Center would be a "better fit" for petitioner. Petitioner's father and grandmother also requested that the circuit court commit petitioner to the Anthony Center rather than sentence him to a term of incarceration.

The State requested that the circuit court deny petitioner's request for placement at the Anthony Center. The State emphasized the violent nature of the crime, that petitioner played a leading role in the robberies, and that he failed to accept responsibility for his actions during the presentence investigation wherein, despite having pled guilty, petitioner claimed he was innocent. The State played surveillance videos from the robberies, which showed petitioner pointing the gun at the clerks and demanding money. The State also played petitioner's recorded phone calls from the jail, wherein he admitted to brandishing the weapon and asked his brother to destroy his shoes, which were very distinctive in the surveillance videos due to their white and gold color. The State lastly noted that petitioner was subject to extradition to Maryland for a charge of possession with intent to deliver a controlled substance.[2]

Petitioner spoke on his own behalf, expressing remorse over the situation, accepting responsibility for his actions, and apologizing to the victims and the circuit court. After hearing arguments, the circuit court set forth the factors it was considering. The circuit court noted that it was taking petitioner's age into account, along with the nature of the crimes. The circuit court found "[t]hese are very serious violent offenses and nothing that I say should take away from the fact that this is a violent and dangerous crime." The circuit court also considered petitioner's mental health issues, drug addiction, and criminal history, noting that petitioner was going to be extradited to Maryland on a drug-related felony charge, had a prior charge for receiving stolen property, and had violated his probation. The court stated, "[t]his isn't the first or second strike." Ultimately, the circuit court sentenced petitioner to not less than five nor more than eighteen years of incarceration for the second-degree robbery charge and not less than one nor more than five years of incarceration for each of the conspiracy to commit robbery charges, all of which were ordered to run consecutively for an effective sentence of seven to twenty-eight years of incarceration. In denying petitioner's request for placement at the Anthony Center, the circuit court

---

[1]Petitioner was nineteen years old when he committed the crimes.

[2]Petitioner was arrested for this crime in June of 2017.

2

reasoned as follows:

> The problem is the Anthony Center is a center for youthful offenders, it's not a center for violent dangerous crimes. I am in a position today where I don't believe I have the opportunity to send him to the Anthony Center for these crimes. I don't think it's an appropriate disposition yet I recognize that he needs serious mental health and addiction treatment. The only option that I have is to send him to prison.

> . . . .

> I really have thought and wished that I had a way for [petitioner] to have the treatment that he needs . . . but I can't send him to the Anthony Center for these crimes. It's just not the appropriate outcome. He went into the store. We saw the videos today. The older people working at 7-Eleven were terrified. They didn't know that gun was not a real gun. The other thing that occurred to me as I was going through his employment history is that he had this opportunity to work with his dad. The Anthony Center is for somebody who doesn't have a trade sitting right there for him. He was mowing and landscaping. He was in a business his dad worked hard to build. He was earning a decent wage at that.

It is from the October 3, 2018, sentencing order that petitioner appeals.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Adams*, 211 W. Va. 231, 565 S.E.2d 353 (2002). We have also held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

On appeal, petitioner argues that the circuit court erred in sentencing him to a term of incarceration rather than committing him to the Anthony Center. According to petitioner, he was eligible for placement at a youthful offender center pursuant to West Virginia Code § 25-4-6 as he had not yet reached the age of twenty-five and was convicted of a crime that did not carry a life sentence.[3] Petitioner contends that "[t]he [c]ircuit [c]ourt clearly wanted to send [petitioner] to the [Anthony Center] but believed it couldn't because of the violent nature of the crime." Petitioner argues that the circuit court must have believed it lacked the jurisdiction to commit petitioner to

---

[3]West Virginia Code § 25-4-6 provides, in relevant part, that

> [t]he circuit court may suspend the imposition of sentence of any young adult, as defined in this section, convicted of or pleading guilty to a felony offense, other than an offense punishable by life imprisonment, including, but not limited to, felony violations of the provisions of chapter seventeen-c [§§ 17C-1-1 et seq.] of this code, who had attained his or her eighteenth birthday but had not reached his or her twenty-fourth birthday at the time the offense was committed for which the offender is being sentenced and commit the young adult to the custody of the West Virginia Commissioner of Corrections to be assigned to a center.

3

the Anthony Center, given its statements that it did not "believe that [it] ha[d] the opportunity" to commit him to the Anthony Center and that incarceration was the "only option." Petitioner admits that classifying him as a youthful offender was in the discretion of the circuit court, but argues that the circuit court "simply was hung up on the sheer violent nature of the crimes and the potential for bodily harm the [p]etitioner's actions created." Accordingly, petitioner avers that the circuit court abused its discretion in sentencing him to incarceration. We find petitioner's arguments to be meritless.

We have held as follows:

Just as a trial court's decision to grant or deny probation is subject to the discretion of the sentencing tribunal, so too is the decision whether to sentence an individual pursuant to the Youthful Offenders Act. The determinative language of West Virginia Code § 25-4-6 is stated indisputably in discretionary terms: "[T]he judge of any court . . . **may** suspend the imposition of sentence . . . and commit the young adult to the custody of the West Virginia commissioner of corrections to be assigned to a center." *Id.* (emphasis supplied). Since the dispositive statutory term is "may," there can be no question that the decision whether to invoke the provisions of the Youthful Offenders Act is within the sole discretion of the sentencing judge. *See State v. Allen*, 208 W.Va. 144, [157], 539 S.E.2d 87, [100] (1999) (recognizing that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court"); accord *State v. Richards*, 206 W.Va. 573, 575, 526 S.E.2d 539, 541 (1999) (stating that Youthful Offenders Act "grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center") (citation omitted).

*State v. Shaw*, 208 W. Va. 426, 430, 541 S.E.2d 21, 25 (2000). Upon review of the record on appeal, we find that the circuit court sentenced petitioner within the statutory limits and that the sentence was not based on any impermissible factor. The circuit court was clearly within its discretion to decline to sentence petitioner to a youthful offender program. Moreover, the record reveals there were a host of proper factors considered by the circuit court, such as petitioner's age, his mental health issues, his drug addiction, his criminal history, his ability to maintain a good job in his father's company, and the impact of the crime on the victims. In particular, the circuit court seemed concerned with the violent nature of the crime. As such, it is clear that the circuit court was not simply "hung up" on the violent nature of petitioner's crimes, but thoroughly considered proper factors, including mitigating circumstances, in sentencing petitioner to incarceration.

To the extent petitioner argues that the circuit court believed that it lacked the jurisdiction to commit him to the Anthony Center, we note that his argument is purely speculative. Petitioner points to the circuit court's statements that the Anthony Center was not a center for "violent dangerous crimes," that the circuit court did not believe it had the "opportunity" to send petitioner to the Anthony Center, and that incarceration was the "only option." However, when these statements are viewed in context with the court's other findings, it is clear that the circuit court was aware that it could sentence petitioner to the Anthony Center, but did not believe that was the appropriate disposition. Specifically, the circuit court stated that it was not in a position to commit

petitioner to the Anthony Center because it was not "an appropriate disposition." Further, it noted that, while it desired treatment for petitioner, committing him to the Anthony Center was "not the appropriate outcome." Given these statements, petitioner's argument that the circuit court believed it lacked jurisdiction to commit petitioner to the Anthony Center is without merit. It is apparent that the circuit court simply believed that placement at the Anthony Center was not the appropriate outcome, especially considering the violent nature of the crimes. Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, the circuit court's October 3, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED:** February 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5